ADAMS *v.* STATE.

Opinion delivered March 24, 1930.

*Coleman & Reeder,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

SMITH, J. Appellant was indicted and tried in the Independence Circuit Court upon a charge of having

made or caused to be made a false entry upon the books of the Union Bank & Trust Company, of which institution he was the president, whereby he was falsely given credit for a deposit of $75,000, which was not in fact made, with the intention to deceive the State Bank Commissioner, the bank examiner, and the directors and stockholders of said bank, as to the true condition of the account of the said Adams with said bank. He was convicted, and appealed to this court, where the judgment was reversed, and the cause remanded for a new trial. The facts out of which the prosecution arose, and upon which the conviction was had, are fully stated in the opinion rendered on that. appeal. *Adams* v. *State*, 179 Ark. 1047, 20 S. W. (2d) 130.

It was assigned as error on that appeal, that the court should have granted a change of venue as prayed, but we held that no error was committed in this respect, for the reason that the petition for a change of venue was not supported by the affidavits of two credible persons as the statute requires, but the judgment was reversed for another reason.

Upon the remand of the cause a new petition for a change of venue was filed, and the prayer thereof was denied by the court, as was the former petition, upon the ground that the affiants were not credible persons within the meaning of the statute. Upon the first petition the court held that only one of the affiants was credible, whereas, at the trial from which this appeal comes, there was only a general finding upon the subject that the petition did not meet the requirements of the law. in respect to the credibility of the supporting affiants.

W. L. Seymore, an affiant held credible by the trial court at the first trial, was one of four affiants who supported the petition for a change of venue at the second trial, and he and three others were examined at the trial from which this appeal comes at great length touching the extent and source of their information upon which they based the opinion that the defendant could not obtain a fair and impartial trial.

No affirmative testimony was offered affecting the credibility of any of the affiants, and it is only contended that they were not sufficiently advised as to the state of the public mind to afford a substantial basis for the opinion that a fair and impartial trial could not be obtained.

The law of this subject was clearly and sufficiently stated in the opinion on the former appeal, and no useful purpose would be served by a restatement.

Seymore's testimony was even more comprehensive upon his examination at the second trial than it had been at the first. W. J. DeCamp was an affiant who signed only the second petition for a change of venue. He testified that he was a former sheriff of the county, was in the insurance business, and had heard the case discussed practically all over the county by people who resided in different sections thereof; that there were but few days when he was out in the country that he did not hear the case discussed, and that it appeared to be the principal topic of conversation, that is, the failure of the bank of which defendant was president, and his connection with the bank and its failure, and that nothing had ever occurred in the county which had been more generally discussed or had aroused more feeling. This affiant and the others gave names of persons in each township about which they were asked who had discussed the prejudice existing against defendant, and among others named as having expressed the opinion that great prejudice existed were the prosecuting attorney and special counsel employed in the prosecution.

As the witnesses, Seymore and DeCamp, testified as to the state of the public mind throughout all parts of the county, and do not appear to have sworn recklessly or without knowledge of the facts, and there was no fact or circumstance adversely affecting the credibility of these affiants, the venue should have been changed as prayed. We find it unnecessary to review the testimony of the other affiants.

The second trial, like the first, resulted in a verdict of guilty, and it is now insisted that certain questions presented on this appeal were also raised on the former appeal but were not there discussed or dispoesd of. We do not think so. The former opinion discussed and disposed of all the assignments of error which we thought were sufficiently important to require discussion, and this opinion appears to have been substantially followed at the trial from which this appeal comes.

The defense is threefold: (1) That there was no false entry within the meaning of the statute under which the indictment was drawn; (2) if there was, defendant did not make it or cause it to be made; (3) the entry was not made with the intention of deceiving the Bank Commissioner or the examiners representing his department.

The testimony in the present case is not substantially different from that offered at the first trial, and in the former opinion we defined a false entry, and held that the testimony was sufficient to support a finding that a false entry was made, and we adhere to what was there said on that subject.

It is earnestly insisted, however, that the undisputed testimony shows that the defendant did not make a false entry, nor cause it to be made, and that a verdict of not guilty should have been directed for that reason; but we do not agree with counsel in this contention. It is true the testimony affirmatively shows that defendant did not personally make the false entry upon the books of the bank, and gave no specific directions that it should be made, but the testimony does show that defendant presented the draft to Kennard, the cashier and bookkeeper, with a deposit slip covering the draft. Defendant, as president of the bank, did not keep the books, but he knew, of course, how they were kept, and they were kept under his supervision or at least the jury might have so found. The testimony shows the manner of handling items of this character. An entry of the transaction must necessarily have been made upon the books of the bank

before defendant could receive credit for the deposit, and when defendant, as president of the bank, presented the draft and a deposit slip covering it to the cashier, there was an implied direction from defendant, as chief executive officer of the bank, that the transaction in which he participated be handled in the usual and ordinary way, and its entry on the books of the bank was a part of this routine.

It was, of course, necessary for the State to show that the purpose of the transaction was to deceive the Bank Commissioner, or the examiner, but this was a question of fact which the instructions submitted to the jury.

The judgment of conviction on the former appeal was reversed, because the court had excluded testimony tending to show the good faith of the defendant and the absence of any intention to deceive, and this testimony was admitted at the trial from which this appeal comes. The defendant testified that he thought, and had good reason to believe, that the draft would be honored and paid in due course. As tending to rebut this contention, the State was permitted to show the relation of defendant to the account against which the draft was drawn, and the admission of this testimony is assigned as error.

We think this testimony was competent as bearing upon the important question of the defendant's good faith. If defendant had the right, as we held on the former appeal he did have, to show a reasonable expectation that the draft would be paid, it was competent for the State to show in rebuttal that such was not the fact, and this could only be done by showing defendant's lack of authority to draw and deposit the draft, and to cause an entry thereof to be made.

Certain other assignments of error are discussed, but we think the present and former opinion sufficiently dispose of them without further discussion being necessary.

No error appears except the refusal to change the venue as prayed, but for this error the judgment must

be reversed, and the cause remanded, with directions to enter an order changing the venue, and for further proceedings according to law.

HUMPHREYS, J.  I dissent because the trial court did not abuse his discretion in reaching the conclusion that the affiants in support of the petition for a change of venue were not credible persons within the meaning of the statute.